BWB:GMP
F.#2012R01752

**12 M 1061**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JOHN VENIZELOS,
    also known as "John V." and
    "Big Man,"

        Defendant.

- - - - - - - - - - - - - - - - - - -X

TO BE FILED UNDER SEAL

COMPLAINT & AFFIDAVIT IN
SUPPORT OF ARREST WARRANT

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

    ERIC TYLER, being duly sworn, deposes and says:

    On or about and between January 1, 2007 and February 9, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN VENIZELOS, also known as "John V." and "Big Man," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    (Title 21, United States Code, Section 846).

I. **Qualifications and Sources of Information**

    1. I, Eric Tyler, am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been a DEA Special Agent for approximately two years and am currently assigned to the New York Field Division of the DEA located in New York, New York.

Prior to becoming a Special Agent with the DEA, I was an officer with the United States Secret Service in the Uniform Division for approximately four years. As a Special Agent with the DEA, I am tasked with investigating narcotics trafficking, money laundering and other offenses. During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have conducted physical and electronic surveillance, executions of search warrants, and reviews and analyses of numerous taped conversations and records of drug traffickers. Through my training, education and experience, which has included numerous instances of debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance of individuals engaged in drug trafficking, I have become familiar with the manner in which illegal drugs are distributed in the United States, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. The facts set forth in this affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, members of the DEA and other law enforcement agencies and from review of various documents obtained by subpoena. Furthermore, in the paragraphs below that describe surveillance within the United States, all

surveillance was conducted by officers assigned to the New York Division of the DEA, including myself. The observations of the other involved law enforcement agents have been related to me to supplement the activities that I personally observed.

3. As set forth in the paragraphs below, there is probable cause to believe that the defendant is involved in the trafficking of narcotics, including marijuana. Because I submit this affidavit for the limited purpose of establishing probable cause to arrest the defendant, I have not set forth all facts known to me about this investigation and case.

## II. Facts and Circumstances

### A. Background of the Investigation

4. On or about February 9, 2011, DEA agents approached an individual, who is now a cooperating witness ("CW")[1], to question the CW about criminal activities in which s/he had participated. The CW immediately admitted his/her involvement in those criminal activities, and met with government during proffer sessions to further discuss his/her role in the criminal activity.

---

[1] CW has an extensive criminal history, and has pled guilty to Hobbs Act Robbery and carrying a firearm in relation to one or more crimes of violence. S/he is cooperating with the government in the hope of receiving leniency in federal sentencing and possible entry into the Witness Security Program. Information provided by the CW has been corroborated by consensual recordings, information provided by confidential informants and other cooperating witnesses, and other sources of information.

5. During the course of those meetings, the CW admitted that s/he had been trafficking marijuana for approximately ten years. During that period, from on or about January 1, 2007 through February 9, 2011, the CW advised that an individual s/he knew as "John V." had provided five to ten pounds of marijuana to the CW on a monthly basis. DEA agents later identified the individual known as "John V." to be JOHN VENIZELOS, also known as "John V." and "Big Man."

6. Specifically, the CW admitted that a few weeks prior to meeting with DEA agents on February 9, 2011, s/he had obtained between seven to ten pounds of marijuana, along with its packaging, from VENIZELOS. In accordance with the CW's practice, the CW thereafter brought the marijuana to the residence of the CW's close friend, which was located on Hillcrest Street in Staten Island, New York. The CW informed agents that s/he had placed a portion of the marijuana under the kitchen sink of the residence, and a portion underneath the stairs connecting the first floor to the basement of the residence. The CW advised that s/he had recently viewed the marijuana in the same location.

B. **Marijuana Seizure**

7. On or about March 25, 2011, agents searched the residence located on Hillcrest Street pursuant to a court-authorized search warrant. At the residence, agents seized a brown pillow case containing a green, leafy substance that later tested

positive for 3.5 kilograms of marijuana.[2] Consistent with the CW's description, the marijuana was located under the sink.

8. On the evening of April 4, 2011, the CW met with VENIZELOS to discuss the loss of the marijuana that the CW had obtained from VENIZELOS. During that conversation, which was consensually recorded, the CW explained to VENIZELOS that the marijuana had been taken by individuals who claimed to be law enforcement officers. The CW explained: "I had about almost five in dros, about seven in regs, and about fourteen to fifteen in cash." VENIZELOS replied, "You only owe me thirty-five or something." The CW responded, "Yeah, I don't even know what it is." VENIZELOS stated, "No – yeah, thirty-six and change." The CW agreed, "Yeah, like thirty-six and change." VENIZELOS said, "I was going to say, just make it . . . I was going to say just take – Just take like 6,000 off, I mean." Based on my training and experience, I know that "dros" and "regs" are specific types of marijuana, which have a street value of $4,000 per pound and $1,500 per pound, respectively.

9. Later in the conversation, the CW and VENIZELOS discussed the possibility that the marijuana had been taken by home invasion robbers, rather than law enforcement officers, and speculated about who the robbers may have been. In the context of that discussion, VENIZELOS asked, "how do you know they don't know

---

[2] 3.5 kilograms is equivalent to approximately 7.7 pounds.

you?  Do they know where you spend time and go to work?  Maybe they're trying to find a kid like me – and trying to see where I got, like, fifty?  You know what I'm sayin'?"  The CW replied, "Yeah – exactly.  Like, who am I?  I'm a blow job."  After the CW further expressed how s/he "got hit hard," VENIZELOS stated, "I was hoping it'd be, like, 'hey Marc' . . . 'you know I put out fifteen' . . . but I make two-hundred on regs, you know I don't make that much . . . to say 'hey, here" . . . ."  The CW replied, "I know – I appreciate what you just did[.]"  VENIZELOS replied, "I wish I could – I'm good with thirty.  I don't care if it takes fucking three years.  I don't give a fuck if you have to give five-hundred every fucking time until we get back to normal.  Now we have to watch it, though."  At the conclusion of the meeting, DEA agents met with the CW.  During the meeting with the CW, s/he provided us with the recording device and we debriefed the CW about the meeting.

10.  Approximately three weeks after this meeting, on April 26, 2011, the CW had an in-person meeting with VENIZELOS for the purpose of providing VENIZELOS with a payment for the marijuana that had been seized from the house on Hillcrest Street.  Prior to the meeting, DEA agents had provided the CW with $1,000 Official Advance Funds to use as re-payment for the marijuana that the CW had obtained from VENIZELOS.  During that meeting, which was consensually recorded, the CW made a $1,000 payment to VENIZELOS.

At the beginning of the conversation, VENIZELOS stated, "thanks for meeting me - I don't want to talk on the phone." Later in the conversation, VENIZELOS said, "two-hundred a month - I don't care if it takes ten years." After the CW commented how difficult his/her life had been lately, VENIZELOS stated, "yeah, it has to get better sooner or later . . . . Hopefully, we can get the stash back and all that."

13. Based on my training and experience, 3.5 kilograms of marijuana is an amount consistent with distribution.

Wherefore, it is respectfully requested that an arrest warrant be issued so that defendant JOHN VENIZELOS may be dealt with according to law.

---
Eric Tyler
Special Agent
Drug Enforcement Administration

Sworn to before me this
21 day of November, 2012

---
HON. CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK